All right, our fourth case for today is Goodloe v. Brannon, 18-2908. And we'll begin with Mr. LeGrand. You might be on mute, Mr. LeGrand. Wait, wait, wait. Can we test Mr. LeGrand? Is that better? Yes, there you are. Much better. Madam Chief Judge, and may it please the court. A jury acquitted Jamone Goodloe of personally discharging a firearm during the shooting of Pierre Jones. That same jury acquitted him, convicted him of murder. The split verdict suggests that the jury thought Goodloe might have been present and responsible for a third party who killed Mr. Jones. Now, that third party shooter was never identified. No gun was ever recovered. And no witness who testified saw Mr. Goodloe with a weapon or saw him fire a single shot. Edward Loggins, in fact, denied seeing Mr. Goodloe at all. Two six-minute errors took the scales against Goodloe. First, officers testified that Jones said he was 100% sure that Goodloe shot him. Now, that accusation was made during a show-off that occurred after the crime scene had been secured, after Goodloe was receiving medical treatment, and after police had the one and only suspect in custody. And second, the state court excused trial counsel's failure to investigate witnesses who would have provided an innocent explanation for Mr. Goodloe's presence near the scene, simply because they were not, quote, alibi witnesses. Both errors were contrary to and reasonable applications to Supreme Court precedent. Either is sufficient to warrant hatred here. Your Honor, given my limited time, unless the court has questions about the ineffective assistance claim, which I think mirrors the Campbell v. Reardon case, I'd like to focus on the Confrontation Clause issue. Well, before you do that, you might just say a word about the state's arguments on the topic of procedural default. Yes, Your Honor. So there are two issues in terms of procedural default, state raises, one with respect to Ms. Young and the other with respect to Mr. McKinley. I think we filed a 28-J, citing the McGirt case, where the Supreme Court pretty clearly established that if state court reaches the merits of an opinion, it's not procedural. The issue is not procedural default. And that's actually what happened in both of these instances, with respect to both of these witnesses. The state court used language like moreover or additionally to suggest that it wasn't resolving the issue on either an adequate independent state ground or based on a waiver. So it actually got to the merits of the issue. In turning back to the Confrontation Clause issue, the state court's holding that the primary purpose of the show-off was to resolve an ongoing emergency was contrary to and reasonable application of Supreme Court precedent in two separate and distinct ways. First, the decision improperly relied on hindsight to find that an emergency was ongoing. And second, the decision unreasonably ignored undisputed evidence showing no ongoing emergency. The reliance on hindsight was contrary to the objective inquiry required by the Supreme Court's decision in Crawford v. Washington and Davis v. Washington. Indeed, the Supreme Court used the word objective or objectively eight times in Davis to describe how courts must determine whether statements made to the police are testimonial and therefore subject to a Confrontation Clause. Objective means how a reasonable person would perceive the inquiry under the circumstance. Well, wasn't there circumstantial evidence? I mean, I realize you're kind of getting to the point that, you know, when Jones says, this is the guy, you know, in the hospital room, that's, of course, pretty impressive testimony. But there is other circumstantial evidence that links Mr. Goodloe to this shooting, the clothing that he's wearing, where he's located. And the fact that there are alternative explanations doesn't mean that a trier of fact couldn't accept the state's account of this. He's wearing, you know, the black hoodie. He's got a jacket over it. I will note that if you look it up, it was quite cold that night in Chicago. It was 9 degrees. But the point being that there's circumstantial evidence. So even if there was a mistake in allowing the show of evidence, maybe it was testimonial after all, though I think there's a pretty, you know, state court might not unreasonably have thought that it was non-testimonial. The guy's lying there in the cart and not probably thinking about what's going to happen in court someday. But where's the harm? Well, I think there's no doubt that there's harm from the Confrontation Clause violation here. In fact, I think the state even admits that the show-off accusation was essential to the conviction. It concedes at 38 of its brief that the victim, Jones, never, quote, positively identified the petitioner, Mr. Goodloe, as the perpetrator before the show-off. And the prosecution harped on this 100 percent identification all throughout the trial. In fact, there's a little piece of the closing that I think is really critical here, where the prosecution says, Pierre Jones, through the testimony of Officer Villalota, Hodges, and Paramedic Klinger, tells you that he knew who his shooter was. His shooter was Damon. And he was not only sure, he was 100 percent sure. Now, that was just one snippet from the closing, but the prosecution really did harp on this idea that the show-off was the smoking gun, if you will. And going back to Mr. Jones's— And would you agree, though, that the show-off is okay if it's non-testimonial? Yes, Your Honor. If it's non-testimonial, then the show-off wouldn't be subject to this Confrontation Clause issue. That would be crazy. Whether it's okay under—it's a matter of state court law, which obviously— We don't need to worry about state law. Absolutely. Forgive me for a minute. If Jones had said at the show-off, that's not the Damon who shot me, would the emergency have continued? If not, why not? And if it would have continued, then how can we say it was unreasonable for the Illinois courts to have found the emergency was ongoing during the show-off? Yes, Your Honor. The emergency would not have continued regardless of whether Mr. Jones positively or negatively identified Mr. Goodloe. And here's why. We look at the objective circumstances and facts at the time. And at the time, we know that Officer Martinez and Officer Villalobo went out to search for, quote, one suspect. And when they apprehended and detained Mr. Goodloe, put him in handcuffs in custody, and brought him to the scene, that crime scene was totally secure. It was blocked off. There were half a dozen officers on the scene. Medical personnel were there. They were administering treatment to Mr. Jones. As Chief Judge Woods explained, Mr. Jones was in the back of the ambulance sitting up waiting for the show-off to occur. Neither the officers nor Mr. Jones acted as if there were an emergency. I mean, the fact that the paramedics kept Mr. Jones at the scene for the purpose of allowing this show-off to occur, I think clearly demonstrates that there was no ongoing emergency. And the officers' conduct, as well as their statements, their conduct suggests they were only looking for one guy. And they didn't feel like there was an active threat to the scene or to the public. Your Honor, I see that I'm over time. I'd like to move on. If you'd like to save the rest, that's fine. Thank you, Your Honor. Sure. Mr. Schneider. May it please the Court, Counsel, and Assistant Attorney General Josh Schneider, on behalf of the respondents. I'll start with the confrontation clause issue and then move on to the procedural default question. Let me start you off because it seems clear that the police had no idea there was a second shooter at the time they conducted the show-off. So how could the search for a second shooter justify the finding of ongoing emergency? Aren't we speculating that when we say even without the second shooter, the Illinois court still would have found the emergency ongoing? We're not speculating. So to answer your question, first, the possibility of the second shooter doesn't bear on the question before the court. And the Illinois appellate court was wrong for using hindsight to look at the possibility of a second shooter. But the Illinois appellate court didn't rely solely on the second shooter still at large. It noted specifically that they didn't know if the person they had in custody was the first shooter. They didn't know who they had. Now, it's important to note that Petitioner really has two main arguments as to why there was objectively no possibility that the police believed there was an ongoing emergency when they presented Petitioner at the back of the ambulance. His first argument is that the threat of the shooter on the loose was over because Petitioner was already in custody. That argument assumes that police actually knew that Petitioner was the shooter, and police didn't know that. All they knew were two things about the shooter. First, they knew that his first name was Damon, and second, they knew he was wearing a black hoodie. Now, they found someone named Damon, and he had a black hoodie, albeit one that was under his green field jacket. And under those circumstances, it's entirely reasonable for the police not to consider the threat of a shooter on the loose to be over just because they found someone who matches the somewhat general description. Because after all, you have to consider the scope of the threat they were facing. And here we direct the court to Michigan v. Bryant because there, as here, the police didn't know if the shooting was part of a private dispute between the shooter and Jones. For all they knew, the shooter was on his way back to finish Jones off or to open fire on the police or paramedics who responded. He could be on his way to the next target on his list. There was just no way for police to know that the threat had been resolved to Jones or to the broader public. And the questions that they asked Jones really reflected this. They asked only the questions that were necessary to resolve the threat of a shooter at large. They said, is this the guy who shot you, and are you sure? If he said, no, I'm not sure. That's not the guy who shot me. It was a different Damon. Then absolutely, the emergency would still be ongoing because there's still a shooter at loose in the community. Petitioner's second argument is that regardless of what Jones had said from the back of the ambulance, there was no possibility of an ongoing emergency because the show-up identification at the ambulance was 25 minutes after the shooting. Now, there's some question on this record as to just how long it had been, whether it had been 12 minutes as the police report suggests or up to 25 minutes as the paramedics' testimony could be construed. But even assuming that it was 25 minutes. We've lost the audio. Can you hear me? Now I can hear you. You disappeared for a minute. I apologize. Even if it was 25 minutes between the shooting and the show-up, the Illinois appellate court still reasonably found that the emergency was ongoing. But how long? I mean, I wondered, you know, I suppose hypothetically every criminal case that's ever been started, maybe there was somebody else involved. You know, do we just keep these things open forever? No. And your Honor's. It's not working again. Just hold on a second. Brian, the police responded to a call of someone having been shot rather than a call of shot and fired. And when they arrived, they discovered from the victim that he'd been shot 25 minutes before at a different location. And the Supreme Court had no difficulty at all finding that the threat from the shooter at large in public was still ongoing. So whatever the period is after which the threat of a live shooter dissipates and the emergency ends, we know that 25 minutes is not that period. And certainly the Illinois appellate court was not unreasonable under these facts and circumstances finding it ongoing. And finally, we have to look at both the questioner's point of view and the declarant's point of view. And here there's no basis to believe that Jones' statement to the police was given with the primary purpose of providing a substitute for his own life testimony at a later trial. He was wounded. He had trouble breathing and speaking. He was receiving emergency medical attention at the scene where he had just been shot. So there's nothing about that circumstance that suggests the formality that would alert him to the fact that he was responding to police in their role as detectives rather than first responders. Can I ask you a quick question about these three witnesses that he feels would have really made the difference? I mean, surely if the jury had heard testimony from other people that, you know, this is the neighborhood that Goodloe lives in and he's dropping off, you know, to see Young, and he's otherwise innocently around there, wouldn't it have been possible for the jury to have said, look, they just grabbed the first guy that they saw? A zillion people wear black hoodies in Chicago on days that it's frigid. But, you know, having other witnesses is not the same thing as conveying one's own view. So why isn't this a prejudicial omission? The uncalled witnesses, Your Honor? The uncalled witnesses, yes, Young and the others. McKinley and Lee. Lee and McKinley. Prejudice. Right. The reason there was no prejudice from counsel's alleged failure to investigate these witnesses is that none of the testimony they offered provided any sort of, other than placing Petitioner in the area beforehand. Innocently in the area beforehand and also, you know, throughout. I mean, it's like the state's theory can't be that if you live there, you must be guilty. You know, so there are going to be people in the neighborhood. Sure. But the explanation that he was in the neighborhood for a reason other than murdering Jones sometime earlier in the evening would not have provided a defense given the weight of the evidence that he was the one who shot Jones. It doesn't really matter why he was in the area. We don't know whether he shot Jones as a sudden fit of passion or if he saw something. He didn't know Jones was going to be there, and he saw him, and then he shot him. What we know is that Jones told police, Damon in a black hoodie shot me. Then he later positively identifies Damon as the one who shot him. Lovett testifies that she saw Petitioner in a black hoodie at the scene of the crime immediately before the shooting started. Loggins testified he saw two men in black hoodies at the scene of the crime immediately before the shooting started and could not rule out Petitioner being there because he didn't see their faces. Then Petitioner is found a couple of minutes after the shooting, a couple blocks away in a black hoodie. He lies about his name to the police, and his right hand tests positive for gunshot wounds. Did they test his hand right there at that moment for the residue? No, I believe it was subsequently returned positive. But certainly under these facts, it's not objectively unreasonable for the Illinois Appellate Court to find that there was no reasonable probability of acquittal. It's at least minimally consistent with the facts and circumstances. But in any event, this claim is procedurally defaulted. Petitioner doesn't dispute that a waiver holding or the res judicata holding on post-conviction appeal where he failed to raise his claim through one complete round on direct appeal would bar review if those were the grounds relied upon by this appellate court. He simply disputes that they actually relied upon those grounds. He says there was no plain statement that they relied on those grounds. But we direct the court to pages 8 and 9 of the required short appendix where the state appellate court expressly said that the reason that it was denying the claims was for these procedural bases. It's frozen again. Gets them out from under the procedural bar. That claim is meritless. Carrie B. Saffold explains that in dual ground cases, the procedural basis is sufficient even if there's also a merits holding. And if the court would like, we're happy to submit a 28-J letter including this court's own precedent for that same proposition. I don't think that would be necessary. Thank you. If there are no further questions, we'd ask that, oh, finally, I would note that petitioner can't establish deficient prejudice or deficient performance, remember, because counsel testified at the post-trial evidentiary hearing and was credited by the trial court that petitioner never told him about any of these witnesses. He only told him about a different witness who he didn't know her last name and he didn't have a working phone number. So none of these witnesses were ever brought to counsel's attention as even potential defense witnesses. And for those reasons and the reasons in our brief, we'd ask that the court affirm the position of the district court. All right. Just to clarify, if you don't mind, you're saying that the only witness he mentioned to Mr. Sherman was the aunt whose name he didn't know. Is that correct? That's correct. Counsel testified that the only witness he was told about was an alibi witness. Petitioner had told him he had gone to visit a woman whose last name he did not know. She wasn't there, but he talked to her aunt on the porch for a while. And then when he left, that's when he was arrested. He identified no other witnesses. Thank you. Okay. Mr. LeGrand. Thank you, Your Honor. Just very quickly on the ineffective assistance issue. The jury didn't hear Goodloe's side of the story. They just didn't. Mr. Sherman didn't put on a defense to tell why Mr. Goodloe was in the area, what was his innocent explanation. In fact, this is an incredibly weak case by the state, and I understand the state's argument that it wasn't. But the jury acquitted Mr. Goodloe of personally discharging a firearm in connection with the death of Mr. Jones. So they acquitted him of personally shooting Mr. Jones. And Edward Loggins did say that he did not see Mr. Goodloe at the scene. Ms. Lovett, her testimony changed so many times it was difficult to follow, but she was arrested for not cooperating and actually testified in prison guard. So her testimony wasn't very credible or believable either. And Mr. Lee and Ms. Young, who were these potential exculpatory witnesses, they were identified in the police reports, but then also on the state's witness list. So surely counsel had a duty to investigate potential witnesses who were going to testify at trial. Just very quickly on the confrontation clause issues, I would just note that it sounds like we agree that the state court improperly considered hindsight as part of its analysis. And it is true that they also said that the police couldn't, you know, weren't 100% sure that they had gotten the right guy. Now, if that is the standard, if that's the principle, first it violates Davis v. Washington, which says that non-testimonial statements can evolve into testimonial statements because that seems to suggest, no, that can't be possibly true. But second, it goes back to what chief judge Wood asked. And that is, does this keep going on forever? I mean, you don't really know that you're 100% sure that you've got the guy until he is potentially convicted and has exhausted his habeas relief. Last point I'll make is just on Michigan v. Bryant. That case is helpful to us, I believe, because it makes clear sort of the out of bounds, the outer bounds of this primary purpose inquiry. But on its facts, it is facially distinguishable. There, there were no medical personnel on the scene. The victim had received no treatment, and there was no suspect in custody. And counsel mentioned that in that case, it was a 25 minutes time limit or time gap, but it's not the time that matters. It's the conduct during that time. Here we know for sure that the police officers detained, apprehended, put in handcuffs, Mr. Goodlow brought him to the scene. If they believe there was an ongoing emergency, they would have been exposing him to a threat. There should be no reason to believe that they would do that. Unless the court has any other questions, we would ask that the court grant Mr. Goodlow's habeas relief in order that the state either respond. All right. Well, thank you very much to both counsel and Mr. LeGrand. I believe that you took this case for the court, and we appreciate your help to the court and to your client. And the case will be taken under advisement.